TERRIE LIVINGSTON, CHIEF JUSTICE
A jury convicted Joshua C. Hines of one count of continuous sexual abuse of a child under the age of fourteen (Count One) and a separate count of indecency with a child by contact, alleging contact with the complainant's breast (Count Five). In accordance with the jury's assessment, the trial court sentenced appellant to forty-five years' confinement on Count One and twenty years' confinement on Count Five. Appellant brings two points on appeal, challenging the sufficiency of the evidence to support his conviction on Count One and the admission of outcry evidence relevant to Count One. Because he does not challenge his conviction as to Count Five (indecency by contact with the complainant's breast), we affirm his conviction on Count Five. But because we hold the evidence to be insufficient to support a conviction on Count One, we reverse as to Count One and remand for a new trial on the multiple lesser-included offenses underlying that conviction: indecency with a child and aggravated sexual assault.
Background
About every other weekend, Dorothy[1] and her two siblings would go to Father's apartment in Haltom City to spend time with him. Dorothy first met appellant, a roommate of Father's, in June 2014 when she was twelve years old and about to enter seventh grade. Appellant was married to a woman who also lived in the apartment. Appellant began purchasing Dorothy numerous gifts, including clothes and a computer for school; he also took Dorothy and her siblings shopping and bowling. Sometime in August 2014, Dorothy went with appellant and his wife on a trip to south Texas to pick up appellant's daughter from a previous marriage and bring her back to Haltom City.
On the trip, Dorothy, appellant, and his wife spent the night in a hotel room that had only one bed. Appellant lay in the middle with Dorothy on one side and his wife on the other. Dorothy reported that appellant reached over and grabbed her breast, and she rolled away from him. Appellant's wife did not know what had happened, and Dorothy did not mention the touching the next day. Because they *774 had car trouble, they stayed there for a couple of days.
Following the south Texas trip, Dorothy and appellant became closer and began to talk on the phone and to text each other with increasing regularity. At some point, appellant texted Dorothy a picture of himself in which he is exposing his penis, and Dorothy sent him nude or semi-nude pictures of herself at his request.
According to Dorothy, appellant taught her to kiss when they returned from south Texas. While at Father's apartment, Dorothy and appellant would go into a spare bedroom away from the other adults, where appellant would kiss Dorothy on the lips and reach underneath her clothing to touch her breasts and genitals. Although appellant asked Dorothy to perform oral sex on him, she refused. On another occasion, appellant, his daughter, and Dorothy were watching television late in the night while Father and appellant's wife were asleep in their respective bedrooms. Appellant began to touch Dorothy's genitals over her shorts until she pushed his hand away from her.
School started for Dorothy on August 20, 2014 that year, and she turned thirteen in September. On the night of September 23, 2014, Dorothy sneaked out of Mother's house and met appellant at a nearby grocery store so they could have sex. Appellant drove Dorothy to a shopping center where he performed oral sex on her and vaginally penetrated her. Afterward, appellant drove Dorothy back to Mother's home.
Meanwhile, Mother had begun to notice that Dorothy's behavior was changing for the worse. Dorothy frequently became angry, was quiet and withdrawn, was fighting more with Mother, and was performing poorly in school. After checking Dorothy's cell phone, Mother found "1,415 messages between [Dorothy] and one specific phone number, many at 3:00 and 4:00 in the morning." Those messages were texts from appellant's number to Dorothy's. After speaking with Father, Mother learned, apparently for the first time, about his living arrangement with appellant and that the phone number from which Dorothy had received the 1,415 texts belonged to appellant. Mother also discovered that Dorothy was using social media accounts on Facebook and Kik to exchange messages with appellant.
After making these discoveries, Mother went to Father's apartment to confront appellant. In front of Dorothy and Father, Mother instructed appellant to cease all contact with Dorothy, or she would get the police involved. Appellant did not respond.
Despite Mother's warning, appellant continued to try to contact Dorothy. Mother took Dorothy's cell phone away on September 26, 2014. Afterward, Mother saw a message from appellant to Dorothy, saying that he was worried that Mother would see pictures and texts that were on Dorothy's phone. Mother called the Fort Worth Police Department, but she "didn't have enough evidence at that time." On September 29, 2014, Mother saw a message from Dorothy to appellant stating that Dorothy was worried about being pregnant and that she could not wait to get back into appellant's bed. This message prompted Mother to file a report with the Haltom City Police Department, which began an investigation.
Detective Rick Isham with the Haltom City Police Department used a computer program called Secure View to examine the contents of Dorothy's cell phone. Although this program was able to retrieve data of evidentiary value, the messages transmitted over Kik and Facebook were not retrievable, nor were messages that Dorothy had deleted before the police seized the phone. Among the items of evidence Detective Isham was able to retrieve *775 were five or six pictures of a partially-clothed Dorothy as well as a picture of appellant naked.
As part of the investigation, Dorothy was taken to Alliance for Children, where she spoke with Charity Henry, a child forensic interviewer. In the interview with Henry, Dorothy discussed having sex with appellant, including vaginal intercourse and oral sex. Stacey Henley, a sexual assault nurse examiner (SANE), conducted an examination of Dorothy two days later at Cook Children's Medical Center. During the examination, Dorothy told Henley that appellant had penetrated her vagina with his penis and that he had performed oral sex on her during their September 23, 2014 encounter in his car. An arrest warrant for aggravated sexual assault of a child was issued for appellant on the same day.
Evidence Supporting Minimum Thirty-Day Period
In his first point, appellant challenges the sufficiency of the evidence to support his conviction for continuous sexual abuse.
Standard of Review
In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Id. at 319, 99 S.Ct. at 2789 ; Murray v. State , 457 S.W.3d 446, 448 (Tex. Crim. App.), cert. denied , --- U.S. ----, 136 S.Ct. 198, 193 L.Ed.2d 127 (2015).
The trier of fact is the sole judge of the weight and credibility of the evidence. See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979) ; Dobbs v. State , 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. See Montgomery v. State , 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. Murray , 457 S.W.3d at 448. We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. Id. at 448-49.
To determine whether the State has met its burden under Jackson to prove a defendant's guilt beyond a reasonable doubt, we compare the elements of the crime as defined by the hypothetically correct jury charge to the evidence adduced at trial. Thomas v. State , 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) ; see Crabtree v. State , 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. Thomas , 444 S.W.3d at 8. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. See ids="6905687" index="15" url="https://cite.case.law/sw3d/444/4/#p8">id. ; see also Rabb v. State , 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives *776 for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").
The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. Dobbs , 434 S.W.3d at 170 ; Acosta v. State , 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).
Analysis
Appellant argues that the evidence is insufficient to support his conviction for continuous sexual abuse because the offense requires proof of two or more acts of sexual abuse separated by at least thirty days, but the acts to which Dorothy testified occurred less than thirty days apart. See Michell v. State , 381 S.W.3d 554, 561 (Tex. App.-Eastland 2012, no pet.) ("[A]lthough the exact dates of the abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration."); Smith v. State , 340 S.W.3d 41, 48 (Tex. App.-Houston [1st Dist.] 2011, no pet.) ("[T]he offense of continuous sexual abuse of a child does require proof that the last act of sexual abuse occur on at least the 29th day after the day of the first act.").
The penal code provides that
(b) A person commits an offense if:
(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and
(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.
(c) For purposes of this section, "act of sexual abuse" means any act that is a violation of one or more of the following penal laws:
....
(2) indecency with a child under Section 21.11(a)(1), if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child;
(3) sexual assault under Section 22.011;
(4) aggravated sexual assault under Section 22.021;
....
(d) If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.
Tex. Penal Code Ann. § 21.02(b) - (d) (West Supp. 2016). According to the Texas Court of Criminal Appeals,
[t]he statutory language reflects that the Legislature intended to permit one conviction for continuous sexual abuse based on the repeated acts of sexual abuse that occur over an extended period of time against a single complainant, even if the jury lacks unanimity as to each of the particular sexual acts or their time of occurrence, so long as the jury members agree that at least two acts occurred during a period that is thirty or more days in duration.
Price v. State , 434 S.W.3d 601, 605-06 (Tex. Crim. App. 2014).
The indictment charged that on or about July 1, 2014,
*777 [t]hrough the 1st day of October, 2014, [appellant] did intentionally or knowingly, during a period of time that is 30 days or more in duration, commit two or more acts of sexual abuse, to wit: aggravated sexual assault of a child under 14 by causing the sexual organ of the defendant to contact the sexual organ of [Dorothy] and/or by causing the sexual organ of [Dorothy] to contact the mouth of the defendant and/or indecency with a child by touching the genitals of [Dorothy], and at the time of the commission of each of these acts of sexual abuse the defendant was 17 years of age or older and [Dorothy] was younger than 14 years of age ....
Although appellant does not challenge the sufficiency of the evidence as to any other element of the offense, our review of the evidence in accordance with the applicable standard of review shows that it is sufficient to support the other elements of the offense including that appellant committed more than one underlying act of charged sexual abuse-indecency by touching Dorothy's genitals, oral to genital contact, and vaginal penetration-and the ages of both Dorothy and appellant. Cf., e.g. , Pollock v. State , 405 S.W.3d 396, 404-05 (Tex. App.-Fort Worth 2013, no pet.) (holding that specific acts of sexual abuse alleged to have constituted continuous sexual abuse are not separate elements subject to the unanimity requirement and that element jury must unanimously find is pattern of abuse or series of acts). Appellant has not challenged the sufficiency of the evidence to support his conviction for Count Five (the touching of Dorothy's breast), nor does he contend that the jury could have mistakenly convicted him of Count One based on the evidence supporting his conviction for Count Five. Because the evidence shows that appellant engaged in penile-vaginal intercourse and oral sex with Dorothy on September 23, 2014, and there is no evidence of further sexual contact between appellant and Dorothy after that date, we will review in detail only the evidence pertinent to when the sexual abuse alleged in Count One may have begun.
Dorothy testified that she typically stayed at Father's every other weekend, but she did stay for an entire week "[a]round" August 2014. The trip to south Texas occurred "[l]ike the second week of August," and when they returned, they went back to Father's. Dorothy affirmed that "after [they got] back from south Texas," appellant taught her how to kiss. She and appellant would kiss in the spare bedroom at her Father's, and appellant would touch her "boobs and ... vagina" under her clothes. Dorothy also testified to a specific incident on "one of the weekends" she stayed with Father during which she and appellant were watching TV on the couch with appellant's daughter in the room on the floor in front of them. Appellant touched her "vagina" on top of her clothes. This occurred before Mother became suspicious and started checking Dorothy's cell phone.
On cross-examination, appellant's counsel questioned her as follows:
Q. Okay. So, now previously in one of the meetings that you've had to prepare for your testimony, you-you talked to the prosecutors and at that point you told them that [appellant] had touched your vagina at the house where [appellant] and your dad live; is that right?
A. Yes.
Q. And you told them that that was at least two weeks after this trip, correct?
A. Yeah.
The above testimony occurred during the State's case-in-chief. Appellant called Dorothy as a witness the next day during *778 his case-in-chief, and she testified as follows:
Q.... You had an opportunity to testify yesterday and you testified that the trip that you guys took, that you, [appellant's wife, appellant, and appellant's daughter], that that was in the middle of August , right?
A. Yeah.
Q. And that the first time that your genitals were touched was at least two weeks after that trip, right?
A. Yes.
[Emphasis added.] However, on cross-examination, the State elicited testimony that the first touching of her breast had occurred in south Texas before her September birthday and before school started. The State attempted to clarify when the "touching" started:
Q. In fact, when I asked you yesterday if it was closer to July the 4th, you said it was the first part of August?
A. Yeah.
Q. So when you said it was the first part of August, but then when Defense talked to you and he said the middle of August, you agreed with that as well.
A. Uh-huh.
Q. Do you understand that the first part of August and the middle of August are really two different time frames?
A. Okay.
Q. When you're thinking about the times that you spent with your dad-well, let me ask you this. Do you remember approximately the date when you first met [appellant]?
A. No.
Q. Was it the first part of summer, the middle of summer?
A. The first part.
Q. So the first part of summer, would that be like June or July?
A. June.
Q. June. And so you met him the first part of June?
A. Yeah.
Q. And is that about when he started buying you presents?
A. Yeah.
Q. Do you recall when he bought you the computer?
A. No.
Q. And at some point you go to south Texas. Are you sure it was in August?
A. Yeah.
Q. Did you have any holidays that you celebrated at your dad's?
A. No.
Q. What did you do for Fourth of July?
A. I was with my mom, I think.
Q. You think?
A. I don't remember.
Q. And that's-that's fair.
So if you-when you-in your mind when it's the first of August that you went to south Texas, and you testified that he only touched your breasts there; is that correct?
A. Yeah.
Q. But when you got home to your dad's, is that when he took you into the storage-the other bedroom that they use as storage ?
A. Yeah.
Q. And is that when he was touching-is that when y'all were kissing?
A. Yeah.
Q. And when he was teaching you to kiss, was he also touching other parts of your body?
A. Yeah.
Q. And what were those parts?
A. Everything.
Q. Your breasts?
*779 A. Yeah.
Q. Your genitals?
A. Yeah.
Q. And when we say genitals, do you mean your vagina?
A. Yes.
Q. Was it inside or outside the clothing?
A. Both.
Q. So he would do it inside?
A. Yeah.
Q. Would he use his fingers on the inside?
A. Yes.
[Emphasis added.]
Mother testified that the text messages she found between Dorothy and appellant "started in August," and she blocked them "about the end of August."[2] Detective Isham testified that the last modified date listed on Dorothy's cell phone for an image that he found of appellant displaying his penis was August 28, 2014. According to Detective Isham, this was not necessarily the date the image was sent but rather "whether it was brought into the system or they manipulated it, renamed it, something like that." Detective Isham also testified that he found a calendar entry in Dorothy's phone dated August 14, 2014 that stated, "me and Josh started dating or something to that effect." Although on cross-examination, Detective Isham agreed that he knew at the time of trial that the entry was not relevant, he was not asked why. Appellant later called Dorothy during his case-in-chief, who testified that the calendar entry did not refer to appellant but instead referred to "the Josh I date at school." She clarified on cross-examination by the State, however, that by dating, she meant "[t]alking and sitting next to each other." She clarified that this occurred "[o]nly at school."
Appellant urges that the only possible interpretation of the above evidence is that he touched Dorothy's breast during the second week of August 2014 on a trip to south Texas, that nothing happened when they returned to Father's from the trip, that he and Dorothy began talking and texting over the next two weeks after that, and that the kissing and touching began at the end of that two-week period. Contrary to appellant's assertions, the jury could have reasonably inferred from Dorothy's testimony that the kissing and simultaneous genital touching started around the same time as the texting and talking. But we nevertheless conclude and hold that there is no evidence from which the jury could have reasonably inferred that the texting and talking started on or before August 23, 2014.[3]
Dorothy's vague testimony that the kissing and touching occurred "after" the trip to south Texas and her affirmative answer as to whether it started when they got home from the trip do not indicate when in August the genital touching started. And even if the jury disbelieved Dorothy's testimony that the calendar entry referred to a different Josh-which it was entitled to do since she testified that she dated him only at school and according to Dorothy, school had not yet started on August 14-there is no evidence from which the jury could have inferred that by "dating," Dorothy *780 meant the sexual activity had started. The state of the evidence was such that the jury could only speculate as to whether the beginning date of the sexual activity was more than thirty days before the September 23 penile-vaginal intercourse and oral sex. See Anderson v. State , 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) ; Winfrey v. State , 393 S.W.3d 763, 771 (Tex. Crim. App. 2013). But cf. Machado v. State , No. 02-15-00365-CR, 2016 WL 3962731, at *3 (Tex. App.-Fort Worth July 21, 2016, pet. ref'd) (mem. op., not designated for publication) (reviewing sufficiency of evidence to prove that series of acts of sexual abuse occurred over the required time frame and noting "evidentiary puzzle pieces that the jury could have carefully fit together to rationally find beyond a reasonable doubt that" continuous sexual abuse had occurred over a period of thirty days or more).
We sustain appellant's first point. But because our disposition of the second point could impact our disposition of the appeal as to Count One, we will also review that point.
Outcry Witness
Appellant's second point is a challenge to the trial court's admission of testimony from Charity Henry, an employee of Alliance for Children, regarding the continuous sexual abuse offense. The State offered Henry's testimony as an outcry witness, which appellant contends is improper because the evidence shows that Dorothy's first outcry was to the SANE on October 1, 2014.
Article 38.072 of the Texas Code of Criminal Procedure provides an exception to the hearsay rule for testimony by outcry witnesses in cases involving sexual offenses against disabled persons and children under fourteen. See Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2016). It applies only to statements made to the first person over eighteen "to whom the [complainant] ... made a statement about the offense or extraneous crime, wrong, or act." Id. art. 38.072, § 2(a)(3).
The determination of which witness is a proper outcry witness is event-specific rather than person-specific, meaning that multiple outcry witnesses may testify so long as each of them testifies to only one event and they do not simply repeat the same event. West v. State , 121 S.W.3d 95, 104 (Tex. App.-Fort Worth 2003, pet. ref'd) ; Broderick v. State , 35 S.W.3d 67, 73-74 (Tex. App.-Texarkana 2000, pet. ref'd) ; see, e.g. , Polk v. State , 367 S.W.3d 449, 453 (Tex. App.-Houston [14th Dist.] 2012, pet. ref'd) (holding that trial court did not abuse its discretion by allowing adult brother and mother to testify about two different types of nonsubsumed touching occurring during same encounter when child did not reveal both types of touching to brother).
Dorothy testified that she saw the SANE two times, and the SANE affirmed that she met with Dorothy in the emergency room on October 1, 2014, five days before Henry's forensic interview of Dorothy. Although appellant objected that the SANE "testified that she had a conversation with [Dorothy] on October the 1st where she said that she had sex with [appellant] in a car, at Cook Children's ER," the SANE did not testify about anything Dorothy told her on October 1 other than that she did not complain of any pain. But Dorothy answered yes to the following questions: "And the first time that you went, did you speak with a nurse?"; "Did you tell her what happened?"; "Did you tell her who was involved?"; "And did you tell her that it happened in a car?"; "Did you tell her that it happened one time?"; and "[T]hen later you went back to the hospital and had your exam ... ?" Mother also affirmed that Dorothy met with the *781 SANE at Cook Children's emergency room before she met with Henry, but the SANE did not tell Mother what she and Dorothy had talked about.
To qualify as an outcry, "the statement must be more than words which give a general allusion that something in the area of child abuse was going on." Garcia v. State , 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). We do not determine the sufficiency of a statement for outcry purposes simply by comparing different statements the child gave to different individuals and deciding which person received the most detailed statement about the offense. See Elder v. State , 132 S.W.3d 20, 26 (Tex. App.-Fort Worth 2004, pet. ref'd), cert. denied , 544 U.S. 925, 125 S.Ct. 1645, 161 L.Ed.2d 484 (2005). For a statement to qualify as an outcry, however, the record must show that the child described the alleged offense in some discernible manner. Garcia , 792 S.W.2d at 91.
The court of criminal appeals has held under similar facts that testimony by a child that she told her teacher "what happened," without more,[4] did not describe the offense alleged in a sufficiently discernible manner to qualify as an outcry under article 38.072. Id. Accordingly, we conclude and hold that the trial court did not abuse its discretion by overruling appellant's objection to the testimony of Henry, the forensic interviewer. See ids="9993027" index="37" url="https://cite.case.law/sw2d/792/88/#p91">id. ; Schuster v. State , 852 S.W.2d 766, 768 (Tex. App.-Fort Worth 1993, pet. ref'd).
We overrule appellant's second point.
Conclusion and Disposition
Because appellant's points raise arguments solely as to Count One, we affirm the judgment as to Count Five (indecency by contact with the complainant's breast). See Tex. R. App. P. 38.1(i), 47.1.
Usually, after we have found the evidence insufficient to support a conviction for a greater-inclusive offense, in deciding whether to reform the judgment to reflect a conviction for a lesser-included offense, we must answer two questions: (1) in the course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and (2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense? Thornton v. State , 425 S.W.3d 289, 299-300 (Tex. Crim. App. 2014). If the answers to both questions are yes, we must reform the judgment to reflect a conviction for the lesser-included offense. Id. at 300. However, the court of criminal appeals has held that mandatory reformation does not apply "to circumstances where there are multiple lesser-included offenses that meet the criteria for reformation, or where [a court has] no way to determine which degree of the lesser-included offense the jury found the appellant guilty of." Rodriguez v. State , 454 S.W.3d 503, 510 (Tex. Crim. App. 2015) (op. on reh'g). In either situation, a remand for a new trial is the appropriate remedy to avoid an unjust acquittal. Id.
The offense of continuous sexual abuse of a child has five elements: (1) a person (2) who is seventeen or older (3) commits a series of two or more acts of sexual abuse (4) during a period of thirty or more days, *782 and (5) each time the victim is younger than fourteen. Tex. Penal Code Ann. § 21.02(b) ; Carter v. State , No. 04-15-00319-CR, 2016 WL 2595071, at *3 (Tex. App.-San Antonio May 4, 2016, no pet.) (mem. op., not designated for publication). Indecency by contact with the genitals as alleged in this case is one of the predicate "acts of sexual abuse" for the continuous sexual abuse offense and, thus, is a lesser-included offense of continuous sexual abuse. Tex. Penal Code Ann. § 21.02(c), § 21.11(a)(1) (West 2011); see Soliz v. State , 353 S.W.3d 850, 854 (Tex. Crim. App. 2011) ; Bleil v. State , 496 S.W.3d 194, 214 (Tex. App.-Fort Worth 2016, pet. ref'd). Likewise, aggravated sexual assault by (a) intentionally or knowingly causing the penetration of the sexual organ of a child younger than fourteen or (b) intentionally or knowingly causing the sexual organ of a child younger than fourteen to contact the mouth of the actor are predicate "acts of sexual abuse" constituting lesser-included offenses of continuous sexual abuse. Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (iii) (West Supp. 2016).
For the jury to have convicted appellant of the greater offense of continuous sexual abuse under the charge given, it must necessarily have found that appellant committed at least one act of "indecency with a child by touching the genitals of" Dorothy-whether during kissing Dorothy or while watching television on the couch with Dorothy[5] -even if its finding that the touching occurred more than thirty days before the intercourse, oral sex, or both was based upon mere speculation. [Emphasis added.] Likewise, the jury must also have found that appellant committed at least one act of aggravated sexual assault on September 23, 2014-either by penetrating Dorothy or by orally contacting her genitals. The State presented sufficient evidence of all of these predicate acts that the jury must have found.
But here the State proved that appellant committed at least two separate offenses of indecency with a child and two separate offenses of aggravated sexual assault of a child.[6] See, e.g. , Cosio v. State , 353 S.W.3d 766, 769-71, 773 (Tex. Crim. App. 2011) (holding that evidence of indecency by touching genitals of same child on different dates supported separate offenses and reciting Texas law that when State charges different criminal acts, "regardless of whether those acts constitute violations of the same or different statutory provisions," the jury must agree that "the defendant 'committed the same, single, specific criminal act' "); Vick v. State , 991 S.W.2d 830, 833 (Tex. Crim. App. 1999) (holding that each separately described type of conduct in the aggravated sexual assault statute- section 22.021 -constitutes a separate statutory offense). See generally Dixon v. State , 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring) (describing, in context of encouraging legislature to enact a continuous *783 sexual abuse statute, problems inherent in prosecution involving multiple sexual offenses against a child over a prolonged period of time: "The general legal principles are being stretched beyond recognition and common logic in what appears to be a futile attempt to accommodate both (1) the defendant's rights to a specific verdict for one specific criminal act and (2) the simple fact that the criminal conduct at issue is not really one specific act at one specific moment." (emphasis added)). Because the charge on the continuous sexual abuse offense correctly instructed the jury that it did not need to "agree unanimously on which specific acts of sexual abuse were committed by [appellant] or the exact date when those acts were committed," we cannot be certain which, if any, of the multiple indecency and two aggravated sexual assault offenses the jury unanimously agreed appellant committed. Therefore, in accordance with court of criminal appeals authority, we must remand for a new trial on the underlying indecency with a child offenses and aggravated sexual assault offenses alleged in Count One and proved by the State. See Rodriguez , 454 S.W.3d at 510 ; see also Tex. Penal Code Ann. §§ 21.11(a)(1), (c)(1), 22.021(a)(1)(B)(i), (iii).

In this opinion, we use a pseudonym to refer to the minor complainant and the terms Mother and Father to refer to her parents.

Dorothy testified that the September 23 encounter was set up via text, but she also testified that she and appellant texted each other through the Kik app. Mother testified that she first blocked the regular texting feature on Dorothy's phone. She did not confront appellant until she learned that Dorothy was communicating with him through Kik. This occurred sometime before the end of September 2014.

Dorothy admitted that after returning from south Texas, she and appellant talked on the phone, texted "a lot," and texted each other even while in the same room.

The teacher had also testified that in response to her question to the entire class whether someone had ever touched their private parts or treated them in a bad way, the complainant, along with several other students, raised her hand. Garcia v. State , 792 S.W.2d 88, 89 (Tex. Crim. App. 1990). The complainant went to the teacher's desk and told her that she had been having problems at home "[r]egarding the topic that [the teacher] had just discussed." Id. at 89-90.

The trial court correctly instructed the jury that touching of the breast of a child is not a predicate "act of sexual abuse" for purposes of the continuous sexual abuse statute, so that appellant's touching of the complainant's breast on the trip to south Texas would not support the predicate thirty-day timeline. Tex. Penal Code Ann. § 21.02(c)(2).

The oral sex was not subsumed within the penetration offense or vice versa. See Patterson v. State , 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (holding that, while different conduct described in sexual-offense-against-children statutes constitutes different offenses, some offenses may be subsumed by another, depending on the specific facts: "For example, indecency by genital exposure of oneself in the course of manual penetration of another are separate offenses, while penile contact with mouth, genitals, or anus in the course of penile penetration will be subsumed. Thus, indecency by exposure may or may not be a part of sexual assault or indecency by contact, depending on the facts of the case." (footnote omitted)).