

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00389-CR

FREDDIE DUWAYNE HUTCHINSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 316th District Court of
Hutchinson County, Texas
Trial Court No. 12,327, Honorable James M. Moseley, Presiding

September 23, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Freddie Duwayne Hutchinson appeals his two convictions for indecency with a child by sexual contact and one for aggravated sexual assault of a child. Three issues pend for review. One concerns the denial of appellant's right to confront a witness, another the admission of outcry, and the last, the sufficiency of the evidence supporting conviction. We affirm.

*Background*

For purposes of this appeal, we assign the 13-year-old female victim the fictitious name "Bee." The State indicted appellant and alleged, in the three counts underlying his ultimate convictions, that he 1) caused his tongue to penetrate Bee's genitals, 2) caused his fingers to penetrate her genitals, and 3) had Bee touch his genitals, all with the intent to arouse or gratify his sexual desire. Two instances of misconduct, i.e., penetration with tongue and her touching his genitals, occurred the same evening while Bee attempted to sleep on a "pallet" made of blankets and a pillow. She was spending the night at her grandmother's house at the time and was left in appellant's care. Bee awoke, noticed her panties were lowered, saw appellant kneeling or crouched over her with his hands on her legs, and felt what she described as his wet tongue touching the inside and outside of her vagina. Then, appellant lay beside her, "grabbed" her hand, and placed it in his pants on his penis. While conversing with the Bridge examiner about the incident, Bee used silly putty to form the object she touched within appellant's pants.

On a different occasion, Bee again was attempting to sleep, but this time in a bedroom of the house. Though appellant did not touch her with his tongue, he again took her hand and placed it down his pants against his penis, according to Bee. The latter also testified about appellant showing her a pornographic movie wherein a man and woman engaged in sex and asking her if she knew what "porn" was.

*Sufficiency of the Evidence*

We begin our review by first addressing appellant's claim that the evidence was insufficient to support his convictions. He based the issue upon the evidence contradicting Bee's testimony. It came from various sources and purported to render her

2

testimony incredible.  Because sustaining the issue would afford appellant the greatest relief, i.e., an acquittal, we address it first.  *Soto-Hernandez v. State*, No. 07-18-00391-CR, 2020 Tex. App. LEXIS 1094, at *1 (Tex. App.—Amarillo Feb. 6, 2020, no pet.) (mem. op., not designated for publication).

The standard of review we apply here was explained in *Braughton v. State*, 569 S.W.3d 592 (Tex. Crim. App. 2018).  We further note that a conviction for indecency with a child by contact under Chapter 21 of the Penal Code and aggravated sexual assault of a child under § 22.011 of the same code may be supported by the uncorroborated testimony of the child victim.  TEX. CODE CRIM. PROC. ANN. art. 38.07(a) & (b)(1) (West Supp. 2019); *Marquez v. State*, No. 07-19-00137-CR, 2020 Tex. App. LEXIS 3248, at *1–2 (Tex. App.—Amarillo Apr. 16, 2020, pet. ref'd) (mem. op., not designated for publication); *Ryder v. State*, 514 S.W.3d 391, 396 (Tex. App.—Amarillo 2017, pet. ref'd).

Next, the proverbial "hypothetically correct jury charge" against which we assess the sufficiency of the evidence, *see Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (stating that the sufficiency of the evidence is measured by comparing the evidence produced at trial against the essential elements of the offense as defined by the hypothetically correct jury charge), obligated the State to prove the following to secure a conviction for indecency by sexual contact.  It had to establish that appellant, with the intent to arouse or gratify his sexual desire, engaged in sexual contact with Bee, i.e., caused Bee to touch his genitals and Bee was under 17 years old or he touched Bee's genitals.  *See* TEX. PENAL CODE ANN. § 21.11(a) (West 2019) (stating that a person commits an offense if, with a child under 17, the person engages in sexual contact with the child or causes the child to engage in sexual contact); *id.* § 21.11(c)(1) & (2) (defining

3

"sexual contact" as 1) any touching by a person of the anus, breast, or any part of the genitals of a child or 2) any touching of any part of the body of a child with any part of the genitals of a person).

That Bee testified to the events underlying appellant's conviction is undisputed, as is her age. She was 13 years old when testifying. During that testimony, she described being between ages seven and ten when, after inserting his tongue in her vagina, appellant "grabbed" her hand, placed it down his pants, and laid it against his penis. She also testified to appellant, on another occasion and while she remained within the same age range, again taking her hand and again placing it down his pants against his penis. That is some evidence from which a rational jury could conclude, beyond reasonable doubt, that appellant twice engaged in sexual contact with Bee.

To secure a conviction for aggravated sexual assault, as alleged in the indictment, the State had to prove that appellant intentionally or knowingly caused the penetration of Bee's sexual organ (vagina) by any means, that is, with his tongue. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (stating that a person commits an offense by intentionally or knowingly causing the penetration of the sexual organ of a child by any means). Bee's testimony about appellant placing his hands on her legs and inserting his tongue into her vagina while she feigned sleeping was some evidence upon which a rational jury could conclude, beyond reasonable doubt, that the State proved appellant committed the foregoing elements of the crime.

As previously indicated, the actual focus of appellant's complaint about the evidence lay upon testimony purporting to contradict Bee's. While that is a concern, it is not one on which we may place much, if any, emphasis. This is so because the resolution

of credibility issues and the weight to attach to particular evidence are matters left to the fact-finder or jury. *Dobbs v. State,* 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). We must defer to the way in which it resolved them. Indeed, not only must we review the evidence in a light favoring the verdict but also presume that the jury resolved conflicting inferences in a manner favoring the verdict when the evidence creates such conflicts. *Id.* So, because Bee herself testified in a manner supporting the verdict, that suffices to support appellant's convictions under the limitations imposed on a reviewing court. And, we overrule his complaint about the sufficiency of the evidence.

*Denial of Right to Confront*

We next address the allegation that the trial court erred in denying appellant the right to cross-examine Bee's Stepmom, an outcry witness, concerning a sexual affair she had with appellant's son. He sought to use that evidence to illustrate her bias or motive for testifying as she did. In being prohibited from doing that, he allegedly was denied his Sixth Amendment right to confront witnesses. We overrule the issue.

The standard of review is abused discretion. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). Discretion is abused when the decision under attack falls outside the zone of reasonable disagreement. *Id.*

Next, the Sixth Amendment right to cross-examine witnesses allows a party to attack the credibility of witnesses or show their possible bias, self-interest, or motives in testifying as they do. *Id.* at 909. Yet, the right is not unqualified. *Id.* A trial judge may, nonetheless, limit the scope and extent of cross-examination as long as the limitation does not infringe upon the constitutional guarantee of an opportunity for effective cross-examination. *Id.* The court has "'wide latitude'" to restrict such examination based on

criteria like harassment, prejudice, confusion of the issues, witness safety, marginal relevance, or repetitiveness. *Id.* at 910 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)).

Here, appellant sought to cross-examine Bee's Stepmom to show bias and motive. The bias and motive emanated from a purported sexual relationship she had with appellant's underaged son; she was in her 20's at the time while he may have been 15 or 16. According to appellant, Bee's Stepmom either resented him (appellant) for ending the relationship or sought revenge for his threat to inform law enforcement of the potentially criminal affair.

Though the trial court denied him the opportunity to cross-examine her about the matter within earshot of the jury, it permitted appellant to tender an offer of proof. Through that offer came testimony from appellant's son regarding the brief affair and appellant's discovery of it. However, that witness knew not of any action undertaken by appellant in response to the discovery. In turn, Bee's Stepmom denied the affair's existence. Nor could she recall appellant accusing her of engaging in the supposed liaison. The final witness, another of appellant's sons, opined that his brother and Bee's Stepmom "would go off and do things." Though he did not know what it was they did, he was "guessing it was the dirty." Once appellant discovered it, the witness "believe[d] that he [appellant] did say that he [appellant] was going to call the cops." Whether the police were contacted by appellant or anyone else went unmentioned.

Evidence of Bee's Stepmom being angry at appellant for reasons relating to his termination of a purported illicit sexual relationship may well be subjects meriting cross-examination. Such could evince potential motive and bias, as suggested by appellant.

6

Missing though is an elemental component of the equation, that being evidence of Bee's Stepmom knowing about appellant's supposed involvement in ending the relationship or his threat to contact legal authorities. Logically, one cannot be swayed by information of which he or she does not know. Without evidence of that link, the alleged relationship between appellant's son and Bee's Stepmom and its termination were of marginal relevance to topics of motive and bias, or so a trial judge could have reasonably decided. As indicated in *Irby v. State*, 327 S.W.3d 138 (Tex. Crim. App. 2010), the cross-examiner must be able to "show a logical connection between the evidence suggesting bias or motive and the witness's testimony." *Id.* at 152. The logical connection is absent here, and, therefore, we cannot fault the trial court for excluding evidence of the relationship as irrelevant.

*Outcry*

The last issue before us concerns outcry and whether the trial court erred in permitting the Bridge witness to reiterate an event about which Bee's Stepmom had already testified. Both were designated outcry witnesses but as to different events. Stepmom was to testify about what Bee told her regarding appellant touching Bee and causing Bee to touch him. On the other hand, the Bridge witness was designated the outcry witness who would reiterate what Bee said about appellant actually penetrating her vagina with his tongue. While Stepmom's testimony encompassed reiteration only of touching, the Bridge examiner was allowed to address both touching and penetration, over appellant's objection. In allowing the Bridge witness to cover both, the trial court allegedly abused its discretion. We overrule the issue.

An outcry witness is not person-specific, but event-specific. *Robinett v. State*, 383 S.W.3d 758, 761 (Tex. App.—Amarillo 2012, no pet.). Thus, multiple outcry witnesses can testify about different instances of abuse committed by a defendant against the child. *Id.* However, each outcry witness must testify about different events, rather than simply repeating the same event. *Id.* Additionally, to qualify as outcry, the victim's statement must be more than words which give a general allusion that something in the area of child abuse occurred. *Hines v. State*, 551 S.W.3d 771, 781 (Tex. App.—Fort Worth 2017, no pet.). The victim must describe the alleged offense in some discernible way for the statement to be outcry. *Id.* This means, then, that an outcry witness is not the first adult to whom the child made any mention of the offense; it is the first adult to whom the child related specific details concerning the offense. *Salinas v. State*, No. 08-19-00017-CR, 2020 Tex. App. LEXIS 1130, at *14 (Tex. App.—El Paso Feb. 10, 2020, no pet.) (not designated for publication); *see Thomas v. State*, 309 S.W.3d 576, 579 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (holding that the trial court could have determined the statement to the Mother was not outcry because it failed to describe the occurrence with any specificity).

Here, Stepmom testified that Bee told her 1) appellant "touched me," 2) "he would make pallets in the floor and lay down and make [m]e watch porn with him and make me touch him," and 3) "he would . . . grab my hand and touch himself with me, and he would put his hands down her pants." No additional details were provided Stepmom by Bee. In turn, the Bridge examiner described the instance wherein appellant made a pallet on the floor for Bee, inserted his tongue into her vagina as she slept and later awoke, completed that act, lay next to her, and "after he thought that she went back to sleep, she said that

8

she felt him grab her hand . . . felt him grab her hand and move it over to his thing and put her hand there." That led to Bee modeling the object she felt from silly putty for the Bridge examiner, and the examiner reiterating that, too.

One can see overlap between the events of "touching" described by both witnesses. Yet, missing from what Bee told her Stepmom is detail or a more particularized explanation of what appellant made her touch; again, she merely reiterated Bee's statement that appellant "would make me . . . grab my hand and touch himself with me." The specific detail of the offense regarding appellant causing the child to engage in sexual contact came from the Bridge examiner. The latter was the adult to whom Bee described how appellant took her hand, where he placed it, and with what part of his body she came in contact. This information described the offense in a discernible way, not that imparted by Stepmom.

Indeed, Stepmom's reference to being told by Bee that appellant would "touch himself with me" after grabbing her hand likens to the general reference of "appellant using his hands to touch her" found in *Thomas. Thomas*, 309 S.W.3d at 579. Lacking detail, the reviewing court found it insufficient to make the adult to whom that was revealed the outcry witness. *Id.* As said there, "[t]he trial court reasonably could have determined that Mary's statement to her Mother was nothing more than a general allusion that something in the area of sexual abuse had occurred and not a clear description of the alleged offense." *Id.* The same is no less true here.

In effect, the proper complaint here may have been that Stepmom was not the true outcry witness regarding the accusation of appellant engaging in sexual contact, given the lack of detail. Yet, that was not the objection asserted. Instead, appellant levied his

objection at the actual first adult to whom Bee provided details.  In other words, he complained of the trial court's decision to permit the actual outcry witness, i.e., the Bridge examiner, to reiterate the true outcry.  Yet, in so allowing the true outcry witness to testify about the details of the sexual contact, we cannot say the trial court abused its discretion.

Having overruled each issue, we affirm the trial court's judgments.


Brian Quinn
Chief Justice

Do not publish.