

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00131-CR

———————————————————

CEDRIC CLARK, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1552113D

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

In a single issue, Appellant Cedric Clark contests the sufficiency of the evidence supporting his conviction for the continuous sexual abuse of Mariah,[1] the minor child of his ex-girlfriend (Mom). Because the evidence is insufficient to support the jury's finding that he sexually abused Mariah over a period of at least thirty or more days, we reverse the trial court's judgment and remand this case for a new trial of the lesser-included offenses charged by the State.

**Background**

Clark moved in with Mom around April 2017. Then-six-year-old Mariah lived with her grandparents, but in June 2017 she started spending weekend nights at Mom's house. Mom had only one bed, so when Mariah stayed over, she slept either in the bed with Clark and Mom or on a pallet on the floor. Mom provided no estimate as to the relative frequency of either situation.

According to Mom's trial testimony, a scared and nervous Mariah approached her on an unspecified date in the fall and said that after Mom had left the bed to make breakfast, Clark had "hugged her and she didn't like it and that she could feel his penis on her butt and that made her uncomfortable." Mom and Clark argued about Mariah's

---

[1]In accordance with rule 9.10(a)(3) and our local rules, we refer to children and family members by aliases. Tex. R. App. P. 9.10(a)(3); 2nd Tex. App. (Fort Worth) Loc. R. 7.

allegation later that day, but they did not break up and continued living together. By December 2017, Mariah stopped spending the night.

Mom and Clark broke up by June 2018. Sometime later, Mariah and Mom had another conversation. During that conversation, Mom asked Mariah if Clark had done anything else, to which Mariah said yes and elaborated, "He tried to put his penis in my back, and then he turned me around, and he put it - - tried to put it in my front." When Mom asked how many times it had happened, Mariah said, "One, two, three, four. I don't know, Mom. Lots of times." After Mom reported these allegations to the police, Clark was charged with continuous sexual abuse of a child.

At trial, then-eight-year-old Mariah expanded on her allegations of abuse. She testified that whenever Mom got out of bed, Clark tried to anally and vaginally penetrate her with his penis, touched her vagina with his hand, and forced her to touch and rub his penis. She testified,

- "[Clark] put his hand in my underwear and started rubbing my front part,[2] and then he tried putting his front part in my front part, and then he tried putting his front part in my back part."

- Clark's hand touched the outside of her "front part."

- "[Clark] almost went to the hole of my back part . . . [with h]is front part."

---

[2]Mariah's testimony and that of the Sexual Assault Nurse Examiner made clear that Mariah referred to her vagina as her "front part," her anus as her "back part," and Clark's penis as his "front part."

3

- After he tried to touch her "bottom part," she turned around to face him, at which point he tried to put his front part in her front part. She clarified that he did not go inside but touched the outside of her private part.

- Clark made her touch his "front part" with her hand and move her hand back and forth on it, and when she tried to move her hand, he grabbed it again and made her rub it again. She described his front part as feeling "[w]atery" and "[w]eird."

Mariah told the jury that this abuse happened "[m]ultiple times" and "either five or six [times]."

Sexual Assault Nurse Examiner Bren Ledbetter testified to her June 2018 examination and interview of Mariah. According to Ledbetter, Mariah said, "It's like how you try to make kids. He tried to put his front part in my back and front part, and then he made me touch it, and that's it." Mariah said that there had been contact "between his front part and her front part on top . . . of it," and the contact was skin-to-skin. Mariah told Ledbetter that Clark "grabbed [her] hand" and put it on his penis. She also said that Clark put his hand on her front part and rubbed it: "[T]hat's another thing he did. Whenever my mom was in the bed, they swapped spots. He started putting his hand in my underwear, touching me. I was uncomfortable. I always need my mom to sleep in the middle." Mariah elaborated, "I felt overwhelmed when he did that. He kept me up for a long time."

When Ledbetter asked, "Did it happen one time or more than one time?" Mariah responded, "More. A bunch." She told Ledbetter that it all happened when she was

4

seven years old (her seventh birthday was in early August, 2017) and that "the most recent time was before summer."[3]

After hearing the evidence, the jury found Clark guilty of continuous sexual abuse and assessed a life sentence. The trial court sentenced him accordingly, and now he appeals.

## Discussion

Clark argues that the evidence is insufficient to support his conviction because the State failed to prove that he committed two or more acts of sexual abuse during a span of at least thirty or more days. *See* Tex. Penal Code Ann. § 21.02 ("A person commits an offense if[,] during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse . . . [against] a child younger than 14.").

---

[3]The jury also heard extraneous-offense testimony from another child who accused Clark of sexually abusing him. Jeffrey, who was eleven at the time of trial, described serious allegations of repeated sexual assaults committed by Clark when Jeffrey was "[p]robably six" years old and Clark was dating Jeffrey's aunt. He recounted how Clark would call Jeffrey into a bathroom closet and penetrate him anally with his hands or other unidentified objects. He recalled how terrifying the abuse was because he did not know or understand what was happening, and he remembered at least one time when Clark dragged him into the bathroom in order to abuse him and another time when Clark told him to "shut the f*** up" so that his aunt would not find them. Jeffrey estimated that this abuse in the bathroom closet happened "a lot of times," probably more than ten times, and "maybe" more than 20, and then he said, "Because all I know is that mostly happened every night." And according to Jeffrey, Clark also once forced him to perform oral sex while he took Jeffrey on a "joy ride" after picking him up from school.

While this testimony provided more evidence of guilt, it was not probative on the question of whether the instances of sexual abuse of Mariah occurred thirty or more days apart.

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622. The standard is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). A speculation-driven conclusion, however, cannot support a finding beyond a reasonable doubt. *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the

6

factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

To determine whether the State has met its *Jackson* burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by the hypothetically correct jury charge to the evidence adduced at trial. *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Jenkins*, 493 S.W.3d at 599. The "law as authorized by the indictment" means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.*; *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

The continuous-sexual-abuse offense was created "in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of offenses when there are ongoing acts of sexual abuse." *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd); *see also Dixon v. State*, 201

7

S.W.3d 731, 736–37 (Tex. Crim. App. 2006) (Cochran, J., concurring) (recognizing the difficulties in prosecuting sexual offenses committed against young children because young children may not "be able to differentiate one instance of sexual exposure, contact, or penetration from another or have an understanding of arithmetic sufficient to accurately indicate the number of offenses"). Nonetheless, there must be some proof, whether circumstantial or direct, that the last act of sexual abuse occurred on at least the 29th day after the day of the first act. *Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

The State charged Clark with abusing Mariah between August 1, 2017, and January 1, 2018, by committing two or more of the following: aggravated sexual assault by causing her sexual organ to contact his, aggravated sexual assault by contacting her anus with his sexual organ, and/or indecency with a child by causing Mariah to touch his genitals by any means.

Mariah testified that the abuse happened after her August birthday—"[m]ultiple times" and "either five or six [times]"—and that Clark always "d[id] the same thing when [Mariah was] in the bed."[4] But her testimony and statements to Mom and Ledbetter do not provide us with any guideposts for when the abuse occurred that

[4]Similarly, Ledbetter recounted Mariah's statement that the abuse happened "[a] bunch." Although Mom testified that she had left Mariah and Clark alone together on multiple occasions generally, she related that she had left them alone in bed together "one other time before." Mariah testified that the instances of sexual abuse occurred in the bed.

would allow us to conclude, without speculating, that the first and last instances of abuse occurred at least thirty days apart.

We encountered a similar situation in *Hines v. State.* 551 S.W.3d 771 (Tex. App.—Fort Worth 2017, no pet.). In that case, a child alleged that her father's roommate had sexually abused her, and the evidence established that the last act of sexual abuse took place on September 23. *Id.* at 777. Looking backward to the first instance of abuse, the child testified that it happened at least two weeks after a trip to south Texas, a trip that had occurred, at the earliest, during the first week of August. *Id.* at 778–79. We reversed the conviction because such vague testimony—that the abuse occurred at least two weeks after the first week of August—required the jury to "speculate as to whether the beginning date of the sexual activity was more than 30 days before [] September 23." *Id.* at 780.

Here, the State urges us to conclude that the jury could reasonably infer the abuse took place over thirty or more days because Mariah only stayed at Mom's on weekends, there are generally four weekends in a month, and Mariah testified that the abuse happened "five or six times." But this argument requires us to engage in speculation, which we are expressly prohibited from doing. *See Hooper v. State*, 214 S.W.3d 9, 15–17 (Tex. Crim. App. 2007) (explaining that while "inference stacking" is not prohibited, appellate courts must consider whether inferences are reasonable in light of the "combined and cumulative force of all the evidence"). To accept the State's argument, we have to assume that the five or six instances of abuse did not happen in a twenty-

9

nine-day period that spanned five weekends (take, for example, in September 2017). And to do so also requires us to assume that the abuse happened only once on any given weekend, despite Mariah's testimony to the contrary that some of the different types of abuse happened on the same date.

There is no testimony or evidence in the record to support either of these assumptions. *See id.* (providing an apt "smoking gun" illustration to demonstrate improper inference stacking). As such, the jury was left to speculate as to the time period when these acts of abuse happened, knowing only that it occurred during some unspecified period of time between August and November of 2017.[5] Because the evidence is insufficient to support a finding that the abuse occurred during a span of at least thirty days or more, we have no choice but to reverse the continuous-sexual-abuse conviction. In that respect, we sustain Clark's issue on appeal.

But as to the remainder of Clark's issue, we disagree with Clark's requested relief of acquittal. We also disagree with the State's request that we reform the judgment to reflect a conviction for a lesser-included offense. The proper remedy in this situation is to remand this case for a new trial. *Hines*, 551 S.W.3d at 783.

We ask two questions when evaluating whether to reform a judgment to a lesser-included offense: (1) in the course of convicting the appellant of the greater offense,

---

[5] We cannot assume that the timeframe extended beyond December. The uncontroverted evidence established that Mariah had stopped staying overnight at her Mom's "by December" of 2017.

must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and (2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense, is there sufficient evidence to support a conviction for that offense? *Thornton v. State*, 425 S.W.3d 289, 299–300 (Tex. Crim. App. 2014). And even if the answer to both is yes, mandatory reformation does not apply "to circumstances where there are multiple lesser-included offenses that meet the criteria for reformation, or where a court has no way to determine which degree of the lesser-included offense the jury found the appellant guilty of." *Hines*, 551 S.W.3d at 781 (quoting *Rodriguez v. State*, 454 S.W.3d 503, 510 (Tex. Crim. App. 2015) (op. on reh'g)).

Aggravated sexual assault and indecency by contact are both lesser-included offenses of continuous sexual abuse, and the jury had to have found that Clark committed at least two of these acts in order to convict him of continuous sexual abuse. *Id.* at 781–82. The evidence is sufficient to support the jury's findings of the predicate offenses.[6] But because the charge correctly instructed that the jury did not have to agree unanimously on which specific acts were committed and when, we cannot be certain which underlying offenses the jury unanimously agreed he committed. *See id.* (holding similarly). Clark is entitled to a specific verdict. *See id.* (citing *Cosio v. State*, 353 S.W.3d 766, 769–71, 773 (Tex. Crim. App. 2011) (holding, in the context of multiple instances

---

[6]Clark does not challenge the sufficiency of the evidence supporting the predicate offenses, only that the offenses were not shown to be thirty or more days apart.

11

of indecency by contact, that the jury must agree that the defendant committed the same, single, specific criminal act)). We must therefore remand for a new trial on the underlying aggravated sexual assault and indecency with a child offenses. *See id.* at 783.

## Conclusion

We reverse the trial court's judgment and remand this case for a new trial.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  October 8, 2020