# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00546-CR

### Jesus Mendez, Appellant

### v.

### The State of Texas, Appellee

### FROM THE 390TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-17-302039, THE HONORABLE CHUCK MILLER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jesus Mendez was charged with one count of continuous sexual abuse of a child for conduct occurring between 2010 and 2015, *see* Tex. Penal Code § 21.02, and alternatively charged with one count of aggravated sexual assault of a child and four counts of indecency with a child alleged to have occurred within the same years, *see id.* §§ 21.11(a)(1), 22.021(a). In addition, the indictment alleged one count of sexual assault of a child occurring outside the years listed above. *See id.* § 22.011(a)(2). The jury charge instructed the jury to only consider whether Mendez was guilty of the alternative aggravated-sexual-assault charge and the indecency charges if it acquitted him of the continuous-sexual-abuse charge. At the end of the guilt-innocence phase, the jury found Mendez guilty of continuous sexual abuse and of sexual assault of a child. After the punishment hearing, the jury assessed Mendez's punishment at life imprisonment for the continuous-sexual-abuse conviction and at twenty years' imprisonment for the sexual-assault conviction, and the trial court rendered its judgments of conviction. *See id.*

§§ 12.33, 21.02(h), 22.011(f). In five issues on appeal, Mendez challenges the trial court's judgments of conviction. We will affirm.

## BACKGROUND

Mendez dated Patricia Ramos before ultimately marrying her and moving in with her and her then nine-year-old daughter A.O. The family lived with Ramos's aunt and uncle for years before moving into an apartment of their own. At both homes, A.O. slept in the same room as Mendez and Ramos.

After A.O. started high school, she informed Mandy Stalcup, the school's social worker, that Mendez had sexually abused her for years, including the night before. Stalcup called the police and Child Protective Services, and Officer John Conner responded to the high school, talked with A.O., arranged for a sexual-assault-forensic exam to be conducted, and drove to Mendez's apartment to further his investigation. The police collected A.O.'s underwear and other clothes that she was wearing during the most recent alleged assault. Russell Kauitzsch, who was a crisis counselor, drove A.O. to the hospital so that the forensic examination could be performed. A few days later, Shelby Duarte, a forensic interviewer for the Center for Child Protection, interviewed A.O. Months later, Mendez was arrested.

At trial, the State called Stalcup and Duarte, and they testified regarding outcries that A.O. made to them. Moreover, Kauitzsch discussed in his testimony his interaction with A.O. before the forensic exam. In addition, the sexual-assault nurse examiner ("SANE") testified about the forensic examination of A.O., about what A.O. told her about the alleged abuse, and about a written statement that A.O. made during the examination. Further, Officer Conner described in his testimony the investigation leading up to Mendez's arrest. During her

2

testimony, A.O. related that Mendez began abusing her several years ago while she was at his house, that the first incident occurred when he touched her after taking her to the bathroom, that the abuse continued when Mendez moved in with her and her mother, that the abuse escalated from touching her vagina with his fingers to vaginal and anal intercourse, that the abuse happened on nearly a daily basis for years, and that the last incident occurred on the night before she told Stalcup about the abuse. In addition, the State called forensic scientists who testified that testing performed on A.O.'s underwear revealed the presence of sperm and showed DNA profiles matching A.O. and Mendez.

The State also called A.O.'s mother, Ramos, to the stand, and she testified that the underwear collected during the investigation was hers and not A.O.'s, that A.O. would sometimes borrow her underwear, that she told the police and Child Protective Services that the allegations were not true, that she believed that A.O. was lying, and that A.O. offered to change her story if Mendez paid her money. However, Ramos also explained that she was having a difficult time financially without Mendez's help, never told the police or the State that the underwear collected in the investigation was hers, allowed Mendez to move back into the apartment even though Child Protective Services told her that he could not be around A.O., and asked A.O. to drop the allegations. Furthermore, Ramos testified that she previously told the State that Mendez told her that he forced A.O. to have sex, was present when Mendez offered A.O. money and a car if A.O. told the authorities that the allegations were not true, and previously told Child Protective Services that Mendez told her that A.O. consented to the sexual activity.

During his defense, Mendez called a forensic DNA analyst who testified that the results of the DNA testing performed by the State were consistent with Mendez having

ejaculated on the underwear, with the underwear being subsequently washed, and with A.O. then wearing the underwear after its being washed.  Further, Mendez called Ramos's aunt who used to live with Mendez, Ramos, and A.O., and the aunt testified that she never saw anything suspicious in the house and that she did not believe that A.O. was sexually abused.

After considering the evidence presented at trial, the jury found Mendez guilty of continuous sexual abuse of a child and of sexual assault of a child.

## DISCUSSION

In five issues, Mendez contends that the trial court made improper comments on the weight of the evidence during A.O.'s testimony; erred by denying his hearsay objections to the testimony from Stalcup, Duarte, and Officer Conner; and erred by denying his objection to the testimony from Kauitzsch.

## Comment on the Weight of the Evidence

In his first issue on appeal, Mendez highlights portions of A.O.'s cross-examination testimony in which she repeatedly used curse words when testifying, addressing defense counsel, and addressing Mendez and refers to the State's argument in which the State described her anger during her testimony as justifiable.  Further, Mendez notes that the trial court did not instruct A.O. to refrain from cursing during her cross-examination testimony even though the State had generally instructed A.O. to avoid cursing while testifying during her direct examination.  Building on the preceding, Mendez asserts that the trial court's "inaction to curb the obscenities and profanity of the Complainant spoke volumes as the Court sat back as if all was well," essentially provided the jury with the trial court's view that A.O.'s responses were appropriate as "righteous indignation," improperly gave its view of the evidence, and therefore,

4

violated his due process rights by commenting on the presumption of innocence. Moreover, although Mendez seems to acknowledge that he did not object to the language used by A.O., he contends that an objection was not required to preserve this issue for appellate consideration because the error is a fundamental one.

As support for his assertion that no objection was required to preserve this issue for appeal, Mendez cites *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000) (plurality op.). In that case, a plurality of the Court of Criminal Appeals determined that the defendant did not have to object to comments made by the trial court imparting "information to the venire that tainted the presumption of innocence" because the error was a "fundamental error of constitutional dimension." *Id.* at 132. However, the Court of Criminal Appeals later explained that *Blue* "has no precedential value" because it is a plurality opinion. *Unkart v. State*, 400 S.W.3d 94, 101 (Tex. Crim. App. 2013); *see Morgan v. State*, 365 S.W.3d 706, 711 (Tex. App.—Texarkana 2012, no pet.) (concluding that "*Blue* is not binding precedent"); *see also Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) (explaining that "numerous constitutional rights, including those that implicate a defendant's due process rights, may be forfeited for purposes of appellate review unless properly preserved"); *Powell v. State*, No. 03-09-00730-CR, 2011 WL 1466876, at *4 (Tex. App.—Austin Apr. 15, 2011, pet. ref'd) (mem. op., not designated for publication) (concluding that defendant did not preserve for appellate consideration his complaint that trial court's statement was impermissible comment on weight of evidence).[1]

---

[1] We note that article 38.05 of the Code of Criminal Procedure provides as follows:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding

5

Even if Mendez was not required to object to preserve this issue for appellate consideration, we would be unable to sustain his first issue. "To constitute reversible error, the trial court's comment to the jury must be such that it is reasonably calculated to benefit the State or to prejudice the rights of the defendant." *Fletcher v. State*, 960 S.W.2d 694, 701 (Tex. App.—Tyler 1997, no pet). "To determine whether the comment is either reasonably calculated to benefit the State or to prejudice the defendant, the appellate court must first examine whether the trial court's statement was material to the case." *Id.* Stated differently, "[a] trial judge improperly comments on the weight of the evidence if he makes a statement that (1) implies approval of the State's argument; (2) indicates any disbelief in the defense position; or (3) diminishes the credibility of the defense's approach to the case." *Thien Quoc Nguyen v. State*, 506 S.W.3d 69, 83 (Tex. App.—Texarkana 2016, pet. ref'd) (quoting *Joung Youn Kim v. State*, 331 S.W.3d 156, 160 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd)).

previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

Tex. Code Crim. Proc. art. 38.05. The Court of Criminal Appeals has explained that compliance with article 38.05 is fundamental to the proper functioning of the adjudicatory system because its text creates "a duty to refrain *sua sponte* from a certain kind of action" and that a claim under article 38.05 may be presented for the first time on appeal absent a waiver of compliance with the statute. *Proenza v. State*, 541 S.W.3d 786, 798, 799, 801 (Tex. Crim. App. 2017). However, no claim under article 38.05 is presented in this case, and at least one of our sister courts of appeals has distinguished claims under article 38.05 from due-process claims involving judicial comments by determining that a defendant's due-process claim was not preserved for appellate consideration because he did not object at trial but also concluding that the defendant's claim challenging the propriety of the comment under article 38.05 may be considered even though he made no objection under article 38.05 at trial. *See Pelletier v. State*, No. 14-18-00008-CR, 2019 WL 2536188, at *4 (Tex. App.—Houston [14th Dist.] June 20, 2019, pet. ref'd) (mem. op., not designated for publication). In this case, Mendez has presented no challenge under article 38.05. *See Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) (explaining that appellate courts have no obligation to construct appellants' arguments). In any event, we have been unable to find any authority supporting the proposition that the type of alleged inaction at issue here could somehow violate article 38.05.

Generally speaking, claims asserting that a trial court made an improper comment on the evidence involve allegations that the trial court made a comment orally or in writing to the jury. *See, e.g.*, *Brown v. State*, 122 S.W.3d 794, 799-801 (Tex. Crim. App. 2003) (discussing different types of improper comments that trial courts could possibly make); *Jones v. State*, 788 S.W.2d 834, 835 (Tex. App.—Dallas 1990, no pet.) (concluding that trial court made improper comment by telling jury that "[t]he second phase of the trial is going to be punishment. It will probably be fairly short, probably fifteen minutes, probably twenty at the longest"). Here, in contrast, we are asked to consider whether the trial court's failure to comment effectively constituted an impermissible implied comment on the weight of the evidence. However, we have been unable to find any support for the proposition that the failure to instruct a witness to refrain from cursing, absent some type of request by a party, can somehow be considered an improper comment on the weight of the evidence. Moreover, on the record presented here, we cannot conclude that the trial court's actions effectively made a statement approving the State's argument, expressing disbelief in the defense's position, or diminishing the credibility of the defense's approach.[2]

---

[2] In his brief, Mendez contrasts the trial court's inaction during A.O.'s cross-examination with statements made by the trial court during other portions of the trial and in a pretrial hearing. For example, Mendez refers to a portion of the record in which the trial court stated that his trial counsel was "already starting to act like a jerk," informed his trial counsel that his comments stating that he did not need a lesson from the State about the law were inappropriate, instructed the attorney to act in a professional manner, and directed his trial counsel to never "overtalk a judge." However, Mendez does not further expand his due-process challenge beyond the trial court's alleged inactions during A.O.'s cross-examination. In any event, these comments by the trial court were made at bench conferences or when the jury was out of the courtroom. Moreover, these comments were, at most, "'expressions of impatience, dissatisfaction, annoyance and even anger, that are within the bounds of what imperfect men and women' may display" and did "not establish bias or partiality." *Gaal v. State*, 332 S.W.3d 448, 454 (Tex. Crim. App. 2011) (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)); *see also Hernandez v. State*, No. 03-07-00040-CR, 2010 WL 391850, at *22, *24 (Tex. App.—Austin Feb. 5, 2010, no pet.) (mem. op.,

7

For these reasons, we overrule Mendez's first issue on appeal.

**Outcry Witness Testimony**

In his second and third issues on appeal, Mendez contends that the trial court erred by overruling his hearsay objections to the testimony from the two outcry witnesses. Under the Rules of Evidence, hearsay is defined as a statement that "the declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801. Hearsay is generally inadmissible, *see id.* R. 802, but article 38.072 of the Code of Criminal Procedure specifies that an outcry statement is not inadmissible on hearsay grounds in cases involving certain sexual offenses against children if the statement "describe[s] . . . the alleged offense," is "made by the child," and is "made to the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense," and if the "trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement," Tex. Code Crim. Proc. art. 38.072, §§ 1, 2. "The phrase 'time, content, and circumstances' refers to 'the time the child's statement was made to the outcry witness, the content of the child's statement, and the circumstances surrounding the making of that statement.'" *Buentello v. State*, 512 S.W.3d 508, 517 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (quoting *Broderick v. State*, 89 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)). In an article 38.072 hearing, "the trial court's focus is whether the child's outcry

not designated for publication) (noting that trial courts have broad discretion to express their opinions, including ones that are hostile toward party or attorney, and that trial court's irritation with defense attorneys does not translate to trial court's view about defendant's guilt or innocence and concluding that trial court's statements expressing frustration with defendant's counsel did not "go beyond the bounds of expressions of dissatisfaction that imperfect people can sometimes express").

statement is reliable, not whether the outcry witness is credible." *Id.* at 518. A child's outcry may be reliable even if it contains inconsistent or vague statements detailing the abuse. *Broderick*, 89 S.W.3d at 699.

When interpreting article 38.072, the Court of Criminal Appeals has explained that the provision refers to the first adult "to whom the child makes a statement that in some discernible manner describes the alleged offense." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). In other words, "the statement must be more than words that give a general allusion that something in the area of sexual abuse was going on." *Id.* In general, the proper outcry witness is the first adult to whom the alleged victim relates "how, when, and where" the abuse occurred. *See Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd) (quoting *Hanson v. State*, 180 S.W.3d 726, 730 (Tex. App.—Waco 2005, no pet.)). *But see Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd) (explaining that "the proper outcry witness is not to be determined by comparing the statements the child gave to different individuals and then deciding which person received the most detailed statement about the offense"). In cases where a child has allegedly been the victim of more than one act of sexual abuse, multiple outcry witnesses may testify about separate acts of abuse committed by the defendant against the child. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011).

Trial courts have "broad discretion" when deciding what witnesses qualify as outcry witnesses, and appellate courts review those determinations for an abuse of discretion. *Garcia*, 792 S.W.2d at 91-92; *see Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd); *see also Foreman v. State*, 995 S.W.2d 854, 859 (Tex. App.—Austin 1999, pet. ref'd) (noting that prior cases "establish the difficulty that can arise in identifying the proper outcry witness, and the broad discretion of district courts in making this determination"). Under

that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Appellate courts reviewing a trial court's ruling on the admissibility of an outcry statement consider the evidence that was before the trial court at the time of its ruling. *See Whitten v. State*, No. 07-12-00200-CR, 2013 WL 4711198, at *5 (Tex. App.—Amarillo Aug. 27, 2013, pet. ref'd) (mem. op., not designated for publication).

*Stalcup's Testimony*

In his second issue on appeal, Mendez contends that the trial court erred by overruling his objection to the testimony from A.O.'s high school counselor, Stalcup, because she was not qualified under article 38.072 to testify.

During the article 38.072 hearing, Stalcup testified that she was over eighteen years old, that she worked for a drop-out prevention program at A.O.'s high school, that A.O. was one of her clients, that A.O. made an outcry of sexual abuse in February 2017, that A.O. was "terrified" and "tearful" when making the outcry, and that A.O. stated that she had to tell someone and "couldn't keep it in any more." Regarding A.O.'s statement, Stalcup explained that A.O. related that Mendez "raped" her "three to four times a week since the age of nine and that the last time it happened was the day before," but Stalcup also testified that A.O. did not explain what she meant by the word rape. Further, Stalcup related that A.O. described the first incident of abuse as occurring at Mendez's apartment when he took her to the bathroom so that she could use the bathroom and touched her crotch in an inappropriate manner. Moreover, Stalcup testified

10

that A.O. said she told her mother right after the incident that something happened and that Mendez stated that he was "helping her wipe" after using the restroom.

Although Stalcup's testimony indicated that A.O. provided the most details about an offense that occurred years before making her outcry, Stalcup's testimony also related that A.O. generally asserted that an incident of sexual abuse occurred the day before the outcry. *Cf. Pair v. State*, Nos. 02-13-00406—00407-CR, 2014 WL 5878116, at *4 (Tex. App.—Fort Worth Nov. 13, 2014, pet. ref'd) (mem. op., not designated for publication) (concluding that trial court did not abuse its discretion by admitting outcry statement and noting that outcry statement was made day after incident). In addition, "delay in the report of sexual abuse is to be expected when there is a close personal relationship between the victim and the perpetrator." *Madrid v. State*, No. 08-15-00195-CR, 2016 WL 3092575, at *5 (Tex. App.—El Paso June 1, 2016, no pet.) (op., not designated for publication).

Further, Stalcup's testimony revealed that A.O. described an incident in which Mendez touched her genitals inappropriately after she had gone to the bathroom. *See Gonzales v. State*, 477 S.W.3d 475, 479 (Tex. App.—Fort Worth 2015, pet. ref'd) (determining that admission of outcry witness testimony was proper even though statement was short where it described defendant touching and penetrating her genitals). Although Stalcup testified that A.O. mentioned telling her mother about that incident, Stalcup did not provide any additional details regarding what A.O. communicated to her mother, and Stalcup also explained that A.O. said that she had been keeping the secret for a long time and could not keep the secret anymore.

Moreover, Stalcup explained that A.O. initiated the outcry of her own volition, was upset when describing the abuse, and made the statement when she was in high school, and portions of her statement were corroborated by the evidence recovered during the investigation.

11

*See id.* (listing certain indicia of reliability for outcry statements, including whether evidence corroborates statement, whether child made statement spontaneously, and whether child has ability to narrate, recollect, and observe). Additionally, Stalcup related that the abuser was A.O.'s stepfather, indicating that he would have had the opportunity to commit the abuse. *See id.*

In light of the preceding, we must conclude that the trial court did not abuse its discretion by concluding that the requirements of article 38.072 were satisfied and that, therefore, Stalcup could testify as an outcry witness regarding the first incident of abuse occurring at Mendez's home.[3] Accordingly, we overrule Mendez's second issue on appeal.

*Duarte's Testimony*

In his third issue on appeal, Mendez contends that the trial court erred by allowing the forensic interviewer, Duarte, to testify as an outcry witness because Stalcup was allowed to testify as the outcry witness and because, therefore, Duarte could not have been a proper outcry witness under article 38.072. More specifically, Mendez argues that Stalcup testified that A.O. said that Mendez had raped her the day before her outcry and had been raping her on a regular basis for years, and Mendez urges that Stalcup's testimony "was not general and disclosed the

---

[3] In his brief, Mendez seems to argue that the trial court erred by not making express findings regarding the reliability of the outcry and that the hearing was not a proper hearing under article 38.072 because the focus of the proceeding was on who should testify rather than if the outcry statements were reliable. *See Smith v. State*, 131 S.W.3d 928, 932 (Tex. App.—Eastland 2004, pet. ref'd) (noting that "a timely hearsay objection at trial gives rise to the requirement that the trial court conduct" article 38.072 "reliability hearing"). However, we cannot agree with Mendez's description of the hearing because the trial court explained that the hearing was being conducted under article 38.072 and because testimony was presented during the hearing pertaining to the reliability of the outcry statement. *See* Tex. Code Crim. Proc. art. 38.072. Moreover, "[a] trial court's ruling on a hearsay objection is sufficient to imply a finding about the reliability of the testimony" under article 38.072 "even when the trial court does not make explicit findings on the matter." *Hernandez v. State*, No. 04-09-00584-CR, 2010 WL 4840493, at *3 (Tex. App.—San Antonio Nov. 24, 2010, no pet.) (mem. op., not designated for publication); *see Villalon v. State*, 791 S.W.2d 130, 136 (Tex. Crim. App. 1990).

12

crime of continuous sex[ual] abuse over years." Alternatively, Mendez contends that a forensic interviewer is not the type of outcry witness that the legislature envisioned when it enacted article 38.072 because forensic interviewers work with law-enforcement officials.

During the article 38.072 hearing, Duarte testified that she was over eighteen years old, that she was a forensic interviewer, that forensic interviews are "fact-finding detail-gathering conversation[s]" with children, that a forensic interviewer "is a neutral party," and that she interviewed A.O. on February 10, 2017. At the hearing, Duarte explained that when conducting interviews, she asks her interviewees if they know the difference between the truth and a lie and goes through examples of both. Regarding A.O.'s interview, Duarte related that A.O. described the first incident of abuse at Mendez's home, and Duarte's testimony was consistent with Stalcup's testimony regarding the incident. Regarding subsequent instances of abuse, Duarte explained that A.O. revealed that Mendez continued to touch her on the outside of her clothes in later acts of abuse; that Mendez progressed to directly touching her vagina under her underwear and moving his hand from side to side when she was nine years old; that Mendez began inserting his penis in her vagina when she was eleven years old; that the abuse happened nearly every day; that the abuse would happen when the other people in the home were asleep, gone, or in the shower; that the abuse caused her vagina to hurt; that Mendez would ejaculate on her stomach; that Mendez started inserting his penis into her "butt" when she was thirteen years old; and that the last incident of abuse involved Mendez inserting his fingers into her vagina. In her testimony, Duarte stated that she works with Child Protective Services and law-enforcement officials and that she performs interviews for those organizations. Duarte also agreed that A.O. began describing the abuse in response to her open-ended questions and that A.O. did not initiate the interview.

13

Regarding Mendez's claim that Duarte should not have been allowed to testify because she is a forensic interviewer, we note that nothing in the language of the outcry statute specifically prohibits forensic interviewers from testifying as outcry witnesses. *See* Tex. Code Crim. Proc. art. 38.072. Moreover, other appellate courts have determined that forensic interviewers may serve as outcry witnesses. *See, e.g.*, *Hines v. State*, 551 S.W.3d 771, 781 (Tex. App.—Fort Worth 2017, no pet.) (determining that trial court did not abuse its discretion by overruling objection to outcry testimony from forensic interviewer); *Rodgers*, 442 S.W.3d at 552 (same); *Michell v. State*, 381 S.W.3d 554, 560 (Tex. App.—Eastland 2012, no pet.) (same).

Furthermore, in resolving this issue, we must keep in mind that Mendez was charged with and convicted of continuous sexual assault of a child. *See* Tex. Penal Code § 21.02. A person commits that offense if he "commits two or more acts of sexual abuse" "during a period that is 30 or more days in duration," if he was at least 17 years old "at the time of the commission of each of the acts of sexual abuse," and if "the victim is a child younger than 14 years of age" "at the time of the commission of each of the acts of sexual abuse." *Id.* § 21.02(b); *see also Michell*, 381 S.W.3d at 561 (explaining that continuous-sexual-abuse statute was enacted "in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse"). In other words, to be guilty of this type of offense, evidence must show two or more acts of sexual abuse over a period of at least 30 days in duration. *See* Tex. Penal Code § 21.02(b). In addition, Mendez was also charged with sexual assault of a minor for an alleged act occurring outside the year range for the continuous-abuse charge and on the day before A.O. made an outcry to Stalcup. *See id.* § 22.011(a)(2).

14

Although Stalcup provided details regarding the first incident of abuse during the article 38.072 hearing, the remainder of her testimony reflected only that A.O. related that Mendez had repeatedly "raped" her over several years and that the last instance occurred the night before A.O. talked to Stalcup. Because Stalcup did not provide additional information regarding the nature of the repeated incidents of abuse or what A.O. meant by the term rape, the trial court could have reasonably concluded that Stalcup's testimony regarding events after the abuse at Mendez's home was "nothing more than a 'general allusion' of abuse" and that Duarte should be designated as the outcry witness for the repeated acts of abuse and the sexual assault allegedly occurring on the night before the outcry to Stalcup even though Duarte was not technically the first adult to whom A.O. revealed some of the abuse because Duarte received a detailed statement regarding the subsequent conduct. *See Mims v. State*, No. 03-13-00266-CR, 2015 WL 7166026, at *3, *4 (Tex. App.—Austin Nov. 10, 2015, pet. ref'd) (mem. op., not designated for publication); *see also Michell*, 381 S.W.3d at 559-60 (determining that child's statements to police officer and to 911 operator were general allusions to sexual abuse but that child's statements to forensic interviewer provided "how, when, and where" of abuse); *Smith v. State*, 131 S.W.3d 928, 931 (Tex. App.—Eastland 2004, pet. ref'd) (concluding that testimony expressing that defendant "had been performing oral sex on [the complainant] for about a year" did not relay specific details); *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd) (explaining that counselor was proper outcry witness where complainant told mother that defendant "had touched her private parts" but later told counselor how, when, and where appellant had touched her). Accordingly, the trial court could have reasonably concluded that more than one outcry witness could testify in the case and that Duarte was the proper outcry witness for the alleged abuse occurring after the incident at Mendez's home. *See Polk v. State*,

15

367 S.W.3d 449, 453 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (explaining that "[m]ore than one outcry witness may testify when the outcry statements are about differing events and not a repetition of the same events" and noting that it was only during subsequent conversation to second outcry witness that complainant first offered details about defendant's "contact with her anus").

Moreover, Stalcup testified that A.O. made her outcry in February 2017 and generally stated that the last incident of abuse occurred on the night before the outcry, and Duarte similarly testified that A.O. made her outcry during the forensic interview on February 10, 2017, regarding abuse committed by her stepfather with whom she lived. *See Pair*, 2014 WL 5878116, at \*4; *see also Madrid*, 2016 WL 3092575, at \*5 (explaining that delay of one month between when abuse stopped and when outcry occurred was "not a lengthy delay" under article 38.072). Additionally, although Duarte testified that A.O. did not initiate the conversation, the trial court was aware that A.O. had initiated an outcry days before the interview with Duarte. Further, Duarte related that she asks her interviewees if they know the difference between the truth and a lie and provides examples of both, that A.O. provided details of the abuse in response to open-ended questions, and that A.O.'s responses were consistent with her "developmental maturity for her age." In addition, as set out above, A.O.'s statements were consistent with evidence obtained during the investigation. *See Gonzales*, 477 S.W.3d at 479.

In light of the preceding, we cannot conclude that the trial court's decision in admitting Duarte's "testimony as a second outcry witness" fell outside the zone of reasonable disagreement and, therefore, conclude that the trial court did not abuse its discretion by allowing Duarte to testify as an outcry witness. *See Polk*, 367 S.W.3d at 453.

16

*Harm*

Even if the trial court erred by allowing Stalcup, Duarte, or both to testify as outcry witnesses, we would be unable to sustain either of Mendez's issues. "The admission of inadmissible hearsay constitutes nonconstitutional error." *See Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Accordingly, the error must be disregarded unless it affects a defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). "The admission of inadmissible hearsay is non-constitutional error, and it will be considered harmless if, after examining the record as a whole, we are reasonably assured that the error did not influence the jury's verdict or had but a slight effect." *Linney v. State*, 401 S.W.3d 764, 780 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Moreover, cases have consistently held that any error from the admission of an outcry witness's testimony is harmless if the same evidence is admitted into evidence through other testimony without objection. *See Moody v. State*, 543 S.W.3d 309, 314 (Tex. App.—Eastland 2017, pet. ref'd) (mem. op.) (concluding that defendant was not harmed because "victim testified before the jury without objection to the same facts"); *Gonzales*, 477 S.W.3d at 479 (determining that any error was harmless where victim provided testimony corroborating outcry witness's testimony).

In this case, A.O. provided extensive testimony regarding the abuse and provided even more details than did either of the outcry witnesses, and her testimony constituted approximately 300 pages of the reporter's record. *Cf. Gonzales*, 477 S.W.3d at 479 (noting when explaining that error was harmless that victim "provided greater detail" than outcry witness). In addition, the SANE testified that A.O. informed her that Mendez had penetrated her vagina and ejaculated on her stomach. Further, during the SANE's cross-examination, Mendez asked the SANE to read A.O.'s written statement prepared as part of the forensic examination. That

17

statement related that Mendez had been touching her vagina and "rap[ing]" her "for five or six years now." *See Merrit v. State*, 529 S.W.3d 549, 557 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (observing that error was harmless where police officer and complainant gave testimony that was more detailed than outcry witness's testimony); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (determining that error in admission of outcry witness's hearsay testimony was harmless when similar evidence was presented without objection from complainant, doctor, and medical records).

Accordingly, even if the trial court abused its discretion by admitting any or all of the outcry-witness testimony, we would conclude that Mendez was not harmed. For these reasons, we overrule Mendez's second and third issues on appeal.

**Officer Conner**

In his fourth issue on appeal, Mendez contends that the trial court erred by overruling his hearsay objection to portions of Officer Conner's testimony. While testifying, Officer Conner discussed how it is important to ask a complainant where the most recent instance of abuse occurred, what type of assault occurred, what she was wearing, whether she showered, and whether she knew the assailant because those types of information are helpful in deciding what steps to take next during an investigation, what type of evidence to look for, and "what kind of evidence might still be physically available to us." Next, Officer Conner testified that he talked with A.O. after Stalcup called the police and asked her where the assault occurred and what happened. After Officer Conner provided the above testimony, the following exchange occurred:

[State]: Okay. Were you able to—or did you inquire as to what type of sexual act occurred?

[Officer Conner]: Yes, and we get very specific about that, and that again is that very uncomfortable conversation where you have to have, and we are asking very specific questions, like anatomical questions about what happened.

[State]: And what did you learn?

[Officer Conner]: What did she tell me happened?

. . . .

[State]: Without telling us the exact words that she used, what information did you learn about what took place?

[Mendez]: Objection. That calls for a hearsay answer.

[Trial Court]: Overruled. Let me hear the answer.

[Officer Conner]: She stated that her stepfather inserted his penis into her vagina and ejaculated on her lower abdomen.

Following this testimony, Officer Conner explained that after receiving this information, he reported to his supervisor to determine what he should do next, arranged for a forensic exam to be performed, and drove to Mendez's home to see if he could "make contact with the suspect and also collect evidence."

In light of the quoted exchange, Mendez contends that the trial court improperly allowed Officer Conner to provide hearsay testimony regarding what A.O. told him about the alleged offense. As discussed above, we review evidentiary rulings for an abuse of discretion. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

19

Although hearsay statements offered "to prove the truth of the matter asserted" are not admissible, *see* Tex. R. Evid. 801, 802, "extra-judicial statements [are] not inadmissible hearsay" if "they are admitted not to prove the truth of the matter asserted, but rather to explain how the defendant came to be a suspect," *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995). Stated differently, "[a]n officer's testimony is not hearsay when it is admitted, not for the truth, but to establish the course of events and circumstances leading to the arrest." *Thornton v. State*, 994 S.W.2d 845, 854 (Tex. App.—Fort Worth 1999, pet. ref'd).

Given the nature of Officer Conner's testimony, the trial court could have reasonably determined that Officer Conner's testimony was not offered for the truth of the matter asserted but "to explain how the investigation began and how the defendant became a suspect." *See Lee v. State*, 29 S.W.3d 570, 577 (Tex. App.—Dallas 2000, no pet.); *see also Thornton*, 994 S.W.2d at 854 (explaining that "[t]he critical question is whether there is an *inescapable conclusion* that a piece of evidence is being offered to prove statements made outside the courtroom").

In any event, even if the trial court abused its discretion by overruling Mendez's hearsay objection, we would be unable to sustain his issue. "It is well settled that the erroneous admission of testimony is not cause for reversal 'if the same fact is proven by other testimony not objected to.'" *Smith v. State*, 499 S.W.3d 1, 6 (Tex. Crim. App. 2016) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)); *see also Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (explaining that "[w]e have often held that erroneously admitting evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling'" (quoting *Leday*, 983 S.W.2d at 718)).

20

In this case, A.O. generally testified that Mendez would ejaculate on her lower stomach during some of the encounters and instruct her to clean herself in the shower afterwards. Regarding the last instance of abuse before she made her outcry, A.O. explained that Mendez inserted his penis into her vagina, ejaculated on her stomach, handed her toilet paper, and instructed her to wipe herself. Similarly, the SANE testified that A.O. said that Mendez had penetrated her vagina and then ejaculated on her stomach. Further, when Mendez was cross-examining another police officer, Mendez asked the officer if he reviewed Officer Conner's report and if the report stated that Mendez assaulted A.O. by inserting his penis into her vagina and ejaculating on her stomach, and the officer agreed that the report contained those statements. Accordingly, any error stemming from the trial court's overruling of Mendez's hearsay objection to Officer Conner's testimony would be harmless. *See Crawford v. State*, 595 S.W.3d 792, 805-07 (Tex. App.—San Antonio 2019, pet. ref'd) (concluding that any error from admission of officer's testimony stating that victim told officer that defendant robbed her was harmless where similar testimony was presented at trial from more than one witness, including victim).

For these reasons, we overrule Mendez's fourth issue on appeal.

**Testimony by Victim Crisis Counselor**

In his fifth issue on appeal, Mendez contends that the trial court erred by overruling his objection to a portion of Russell Kauitzsch's testimony. During his testimony, Kauitzsch explained that he has a bachelor's degree in child development as well as a master's degree in crisis counseling, was employed as a crisis counselor for the police for more than ten years, had previously been a sexual-assault counselor, and had a private practice specializing in trauma patients. When asked about his interaction with A.O. shortly after she made her outcry,

Kauitzsch testified that A.O. appeared uncomfortable, nervous, and scared and that at one point A.O. was holding back tears. After that testimony, the following exchange occurred:

> [State]: But based on your extensive training and experience, your ten years with APD alone, your work as a sexual assault counselor before that job, and your work as a crisis counselor now, would you say that [A.O.]'s demeanor was consistent with someone who had been sexually abused?
>
> [Mendez]: Objection, Your Honor, I think that calls for a comment of credibility.
>
> . . . .
>
> [Trial Court]: Overruled.
>
> . . . .
>
> You may answer.
>
> [Kauitzsch]: Yes, ma'am, I would say it would be consistent.

In light of this exchange, Mendez asserts that Kauitzsch's testimony was improper because the State asked him to "testify that in his expert opinion . . . [A.O.]'s demeanor was consistent with someone who was sexuall[y] abused" and, therefore, improperly comment on A.O.'s truthfulness.

As with other issues presented in this case, we review the trial court's ruling on the admission of this evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Although it is true that an expert witness cannot comment on whether an individual or a class to which that individual belongs is truthful, *see Yount v. State*, 872 S.W.2d 706, 711-12 (Tex. Crim. App. 1993); *Wiseman v. State*, 394 S.W.3d 582, 586-87 (Tex. App.—Dallas 2012, pet. ref'd), an "expert may testify that the witness exhibits symptoms consistent with sexual abuse," *Reyes*, 274 S.W.3d at 729; *see Mulvihill v. State*, 177 S.W.3d 409, 414 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (concluding that child-abuse expert "was qualified to render an opinion on whether the complainant had exhibited symptoms

22

consistent with those generally exhibited by sexually abused children"); *see also Schutz v. State*, 957 S.W.2d 52, 70 n.8 (Tex. Crim. App. 1997) (explaining that expert witnesses "may testify to events that he has observed, such as the demeanor of a child victim during out-of-court statements"); *Verdun v. State*, No. 14-08-00864-CR, 2010 WL 183523, at *5 (Tex. App.—Houston [14th Dist.] Jan. 21, 2010, pet. ref'd) (mem. op., not designated for publication) (observing that "[a]lthough an expert witness may not directly comment on a complainant's truthfulness, an expert witness may testify to aspects of a complainant's demeanor that may suggest the complainant was subject to manipulation"). In light of this case law, we cannot conclude that the trial court abused its discretion by overruling Mendez's objection to the State's question regarding whether A.O.'s demeanor was consistent with someone who had been sexually abused.

For these reasons, we overrule Mendez's last issue on appeal.

## CONCLUSION

Having overruled all of Mendez's issues on appeal, we affirm the trial court's judgments of conviction.

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed

Filed: March 26, 2021

Do Not Publish